# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |  |
|---|---|---|
| **PROJECT VOTE, INC.,** | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | 1:16-cv-2445-WSD |
| | ) | |
| v. | ) | |
| | ) | |
| **BRIAN KEMP,** | ) | |
| *In His Official Capacity as Georgia* | ) | |
| *Secretary of State and Chief Election* | ) | |
| *Official for the State of Georgia,* | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PROJECT VOTE'S
## <u>MOTION FOR PRELIMINARY INJUNCTION</u>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION .................................................................................. 1

FACTUAL BACKGROUND .................................................................... 2

      A. Georgia Voter Registration Application Verification Process ............ 4

      B. Project Vote's Negotiations with Defendant ...................................... 8

      C. Notice and Requested Relief............................................................. 11

ARGUMENT ........................................................................................ 13

  I. PROJECT VOTE IS SUBSTANTIALLY LIKELY TO SUCCEED
     ON THE MERITS ........................................................................ 14

     A. The NVRA Requires Georgia to Make the Requested Records
        Available for Public Inspection ............................................... 14

     B. Georgia Refuses to Make the Requested Records Available for
        Public Inspection ..................................................................... 17

  II. PROJECT VOTE WILL SUFFER IRREPARABLE HARM
     ABSENT PRELIMINARY RELIEF............................................. 21

  III. THE BALANCE OF EQUITIES FAVORS GRANTING
     PRELIMINARY RELIEF ............................................................ 22

  IV. A PRELIMINARY INJUNCTION IS IN THE PUBLIC
     INTEREST .................................................................................. 24

CONCLUSION ...................................................................................... 25

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*ACORN v. Cox,*
No. 1:06-cv-1891, 2006 WL 6866680 (N.D. Ga. Sept. 28, 2006) ................21

*Charles H. Wesley Educ. Found., Inc. v. Cox,*
408 F.3d 1349 (11th Cir. 2005) ...........................................................*passim*

*Citizens for Police Accountability Political Comm. v. Browning,*
572 F.3d 1213 (11th Cir. 2009) ................................................... 24

*Common Cause/Ga. v. Billups,*
406 F. Supp. 2d 1326 (N.D. Ga. 2005) ...................................22-23

*Ga. State Conf. of the NAACP v. Fayette Cnty. Bd. of Comm'rs,*
118 F. Supp. 3d 1338 (N.D. Ga. 2015) .............................22, 24-25

*In re Ford Motor Co.,*
345 F.3d 1315 (11th Cir. 2003) ................................................... 19

*Peskoff v. Faber,*
240 F.R.D. 26 (D.D.C. 2007) ...................................................... 20

*Project Vote/Voting for Am., Inc. v. Long,*
752 F. Supp. 2d 697 (E.D. Va. 2010) ............................................ 3

*Project Vote/Voting for Am., Inc. v. Long,*
682 F.3d 331 (4th Cir. 2012) .............................................*passim*

*True the Vote v. Hosemann,*
43 F. Supp. 3d 693 (S.D. Miss. 2014) ................................. 15, 16

STATUTES

52 U.S.C. § 20507 *et seq.* (2012) ............................................*passim*

GA. CODE. ANN. § 50-18-70 (2012).................................................... 20

## PRELIMINARY STATEMENT

Plaintiff Project Vote, Inc. ("Project Vote") seeks preliminary injunctive relief ordering Defendant Brian Kemp, in his capacity as Georgia's Secretary of State and chief election official, to make certain records available for public inspection and copying as required by the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507 *et seq.* (2012).  The NVRA provides citizens and organizations such as Project Vote with the right to inspect "*all* records" relating to programs and activities Defendant conducts to ensure the accuracy and currency of the eligible voter list ("voter roll").

Beginning two years ago, Project Vote sought access to certain records relating to voter registration applications that were rejected, canceled, or otherwise not added to the voter roll because of concerns that Defendant improperly rejected voter registration applications.  After two years of negotiations, Defendant still refuses to make certain essential records available for public inspection even though they are in Defendant's possession and they must be disclosed under the plain terms of NVRA, 52 U.S.C. § 20507(i)(1) (the "Public Disclosure Provision").  Project Vote now seeks preliminary relief from this Court so that Project Vote can provide the oversight function contemplated by the NVRA and ensure Defendant

1

has not improperly rejected, canceled, or otherwise not added voter registration applicants to the voter roll prior to the 2016 general election.

Project Vote satisfies each of the requirements for preliminary injunctive relief:  (1) Project Vote's claim has a substantial likelihood of success on the merits because the NVRA mandates disclosure of the Requested Records defined herein; (2) Project Vote will suffer irreparable injury if an injunction is not granted in sufficient time prior to the 2016 general election; (3) the balance of the equities favors Project Vote where Defendant is merely being ordered to comply with his statutory obligation; and (4) the public interest favors preliminary relief to promote transparency and enable Project Vote to protect citizens' right to vote in the upcoming election.  *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1354 (11th Cir. 2005) (affirming preliminary injunction prohibiting rejection of multiple voter registration applications mailed in single package) (citing *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc)).  This Court should enter the requested relief and enable Project Vote to ensure that Defendant complies with his obligations under federal law.

## **FACTUAL BACKGROUND**

Project Vote is a national, non-partisan, non-profit organization dedicated to ensuring eligible citizens can register, vote, and cast a ballot that counts.  Project

Vote accomplishes this goal by, among other activities, ensuring that voter registration applicants are properly added and eligible voters are not unlawfully removed from the voter roll. *See* Declaration of Brian Mellor, General Counsel for Project Vote, ¶¶ 3-4 (the "Mellor Decl."); *see also* Project Vote's Complaint for Declaratory and Injunctive Relief, ¶ 20 (Dkt. 1) ("Compl.").  In the course of its work, Project Vote regularly requests and uses public voter registration records maintained by state and county officials as required under the NVRA.  52 U.S.C. § 20507(i)(1); Mellor Decl. ¶¶ 5-6.

Project Vote has statutory and constitutional standing to seek injunctive relief.  As explained below, Defendant is required by the NVRA to make available for public inspection certain voter registration records that include the ***reason*** Defendant rejects, cancels, or otherwise does not add voter registration applicants to the voter roll.  Defendant's refusal to comply with that statutory obligation directly injures Project Vote by preventing it from ensuring Georgia's election procedures comply with federal law, advocating for reforms of voter registration procedures, and educating partner organizations on how to most effectively help voters register.  Mellor Decl. ¶¶ 33-36; *see Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 703-04 (E.D. Va. 2010) (recognizing organizational plaintiff suffers injury where defendant fails to disclose information as required by

3

the NVRA); *Charles H. Wesley Educ. Found.*, 408 F.3d at 1352 (organizer of voter

registration drive's injury clearly traceable to defendant's rejection of voter

registration applications).

The NVRA's civil enforcement provision grants Project Vote standing to

remedy this violation of federal law through declaratory and injunctive relief

against Defendant, the chief election official of the state of Georgia.  *See* 52 U.S.C.

§ 20510.  Pursuant to those provisions, Project Vote notified Defendant of his

violation of the NVRA on July 6, 2015.  *Id.* at § 20510(b)(2).  Despite protracted

negotiations seeking a resolution to minimize any burden on Defendant and avoid

litigation, Defendant refused to correct the violation within 90 days of the notice

being provided by Project Vote.  *Id*.  Project Vote therefore brought this suit for

declaratory and injunctive relief from this Court one year later on July 6, 2016.

A.    Georgia Voter Registration Application Verification Process

Defendant Brian Kemp is the Georgia Secretary of State, the chairperson of

the Georgia State Election Board, and the state's chief election official.  In that

capacity, Defendant is responsible for maintaining the Georgia Voter Registration

System ("GVRS"), an electronic database containing information on the state's

voter registration applicants.  Among other uses, the database is used to ensure the

4

accuracy and currency of the voter roll by verifying information and eligibility of

voter registration applicants. *See* Compl. ¶¶ 28-37.

Pursuant to the Help America Vote Act of 2002, 52 U.S.C. § 21083, and

Georgia law, Georgia voter registration applicants must list a Georgia's driver's

license number, Georgia identification card number, or the last four digits of their

Social Security number ("SSN") on any voter registration application. Defendant

is responsible for verifying the information applicants provide against information

in databases maintained by the Georgia Department of Driver Services ("DDS") or

the Social Security Administration ("SSA").

Defendant described the process by which he verifies information in voter

registration applications in an exhibit to a submission to the U.S. Department of

Justice ("DOJ"). *See* Mellor Decl. ¶ 8, Exhibit A (letter and attachment explaining

Georgia voter verification procedures). The verification process begins after

Defendant receives a voter registration application from the board of registrars. *Id.*

at 1.[1] The information is entered into the GVRS and transmitted to DDS for

verification. *Id.* For voter registration applicants who provide a driver's license

---

[1] Page citations to Exhibit A refer to the pages in the document entitled "Process for Entering New Voter Registration Application Information Into the Statewide Voter Registration System." That document was itself an exhibit to Georgia's "Submission Under Section 5 of the Voting Rights Act" to the DOJ on August 17, 2010.

number or a statewide identification number ("Driver's License/ID Card

Applicants"), DDS attempts to match information on the application with

information in the DDS database, including the first name, last name, date of birth,

driver's license or identification card number, last four digits of the SSN, and U.S.

citizenship status. *Id*. at 1-2. For voter registration applicants who only provide

the last four digits of their SSN ("SSN-Only Applicants"), DDS accesses

information through SSA to verify that the first name, last name, date of birth, and

last four digits of the SSN match information in the SSN database. *Id*. Notably,

for Driver's License/ID Card Applicants, information in GVRS database must

"***exactly*** match" the information in the DDS database to be considered "verified in

its entirety." *Id*. at 2 (emphasis added). SSN-Only Applicants are considered "not

verified" only if the SSA database returns a response code for "INVALID

INPUT," "MULTIPLE MATCHES – ALL DECEASED," "SINGLE MATCH

DECEASED," or "NO MATCH FOUND." *Id*. at 2-3.

    ***Records of "Not Verified" Applicants.*** Defendant creates two reports each

day identifying applicants whose information was not verified and listing the

reason for the lack of verification. The first report – the SSVRZ791R1 (the "R1

Report") – lists the specific information which could not be verified with an "N"

next to the field and a "Y" next to information that is verified. *Id*. at 3. The

second report – the SSVRZ791R2 (the "R2 Report") – lists voter registration applicants whose citizenship information could not be verified. *Id*. The R2 Report lists the same information as the R1 Report and also includes a "Citizen" column noting that the applicant "self-reported to DDS that he or she is not a citizen of the United States." *Id*. In addition, for persons who DDS records show to be a non-citizen, a flashing red "NON CITIZEN" warning is shown on the voter maintenance screen and absentee ballot maintenance screens in the GVRS database. *Id.*

For any voter registration application that cannot be "verified in its entirety" by DDS or SSA, the application is considered "incomplete" and the Georgia board of registrars must notify the applicant in writing of the missing information. *Id.* at 4. The notifications sent to non-verified applicants list information that the applicant "provided that did not match the records at DDS" and explain how the applicant can provide corrected information, either in person or by letter. *Id*. Prior to sending such a notice, however, the "board of registrars should check the application to determine whether there are processing or data entry errors," such as a misspelling, transposing of numbers, use of a nickname, or other typographical or common sense errors that can be easily identified. *Id*. For applications where

7

there is such a processing error, the application should be corrected and resubmitted for verification. *Id.*

For voter registration applicants whose applications were "not verified" and who do not respond within 30 days with the missing information, the application is rejected and a written notice is required to be sent to the applicant. *Id.* For not-verified applicants who provide new information, the application is resubmitted to DDS for verification. For applicants listed on the R2 Report who lack verification of citizenship, the board of registrars will change the citizenship status in the GVRS database upon confirmation of citizenship status. *Id.* at 5.

Defendant has thus represented to the DOJ that it maintains records relating to the reasons voter registration applicants are deemed "not verified." *Id.* at 1-5. Indeed, the NVRA's Public Disclosure Provision requires states to maintain "***all*** records" concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" for "at least 2 years." 52 U.S.C. § 20507(i)(1) (emphasis added). These records include the daily R1 Report and R2 Report, as well as the notices sent to "not-verified" voter registration applicants. Moreover, the ability to create such notices indicates that Defendant's database includes specific information relating to the reason Defendant rejected, canceled, or otherwise did not add voter

8

registration applicants to the voter roll, and that such records could be made available for public inspection.

B.   Project Vote's Negotiations with Defendant

Starting in the spring of 2014, Project Vote became concerned that Defendant was improperly requiring proof of citizenship to register to vote or before some voters were able to vote.  Project Vote first submitted a request for records on May 13, 2014 by a letter seeking certain voter registration records to determine if Georgia was requiring applicants to submit proof of citizenship pursuant to Georgia statutes.  Mellor Decl. ¶¶ 9-10.  After two months of silence, Defendant responded on July 11, 2014, demanding payment of $750 and estimating the request would be fulfilled within approximately two weeks.  *Id*. ¶ 11.

Project Vote responded on September 18, 2014 with a $750 check to "ensure receipt of the information as soon as possible," but noted that the NVRA requires Georgia to provide the requested records for public inspection free of cost, and expressly reserved the right to seek reimbursement at a later date.  *Id*. ¶¶ 12-13.  At approximately the same time, Project Vote became concerned that that large numbers of qualified voter registration applicants were not being added to the voter roll.  *Id*. ¶ 14.  In a phone conversation on September 24, 2014 with Defendant's

9

General Counsel C. Ryan Germany, Project Vote's Senior Counsel Brian Mellor requested that the Defendant make available records related to **_all_** voter registration applicants who were rejected or otherwise not added to the roll, as well as records describing or defining any data codes used in such records.  *Id*. ¶¶ 14-15.  Germany agreed to provide the Requested Records and estimated the request could be completed in approximately two weeks.  *Id*. ¶¶ 16-17.

Approximately three weeks later and one week **_after_** Georgia's voter registration deadline for the 2014 midterm elections, on October 14, 2014 Defendant made available for inspection records listing some 14,000 voters with "not verified" status (the "NVF Report" ).  *Id*. ¶¶ 19-20.  However, the NVF Report was insufficient as it listed only those voter registration applicants who were "not verified," but included nothing identifying voters who were rejected for other reasons and nothing explaining the reason or method by which the voter registration applications were not verified.  *Id*. ¶¶ 21-22.  Without such information, Project Vote could not determine if each voter registration applicant was improperly rejected or otherwise not added to the voter roll.  *Id*. ¶ 22.

Project Vote notified Defendant of the deficiencies of the NVF Report one day later on October 15, 2014.  *Id*. ¶ 23.  To ensure Project Vote received complete information necessary to assess Georgia's voter registration procedures, Project

Vote requested records relating to voters labeled as "canceled" as well.  Over the course of the next six months, Defendant repeatedly assured Project Vote that such information would be made available.  *Id*. ¶¶ 23-25.

On April 3, 2015, almost six months after Project Vote notified Defendant of the deficiencies in the NVF Report, Defendant made records available listing all voters who were rejected or canceled from the voter roll (the "Canceled Voter Report").  *Id*. ¶ 26.  As with the NVF Report, the records provided by Defendant failed to include sufficient information explaining the ***reason*** why those voters were rejected or canceled.  *Id*. ¶ 27.  Nor did the information provided indicate whether each applicant was rejected because of a "non-match" between the application and data in the DDS database versus the SSA database.  *Id*.[2]

C.   Notice and Requested Relief

On July 6, 2015, Project Vote notified Defendant, pursuant to Section 11(b) of the NVRA, that he had violated the NVRA by failing to make the Requested Records available to Project Vote for inspection.  Mellor Decl. ¶¶ 28-29.  The notice provided detailed descriptions of Requested Records still outstanding, as

_____

[2] On the same day Defendant made the Canceled Voter Report available, media sources reported that former Georgia Elections Director Linda Ford resigned after an internal investigation concluded that she changed the status of almost 8,000 voters from inactive to canceled within 90 days of a federal election in violation of the NVRA, 52 U.S.C. § 20507(c)(2)(A).  *See* Compl. ¶ 3, 62.

well as detailed descriptions of why the previously provided records were insufficient.  Defendant responded on August 25, 2015, acknowledging that his office had failed to provide information relating to non-matches with the DDS/SSN data, but representing that Defendant would be willing to satisfy Project Vote's outstanding records requests.  *Id*. ¶ 30.

Project Vote continued discussions with Defendant over the following ten months.  *Id*. ¶ 31.  In conversations with Defendant's information technology staff, Project Vote sought to work with Defendant to obtain the Requested Records in the most efficient manner possible.  *Id*.  Despite these drawn-out negotiations, Defendant refused to make additional information available for public inspection, including information sufficient to identify the reason and methods by which voter registration applications were rejected, canceled, or otherwise not added to the voter roll.  *Id*. ¶ 32.

As a result, Project Vote now requests that the Court order Defendant make the following records (collectively, the "Requested Records") available for public inspection in electronic format:

A.    All records relating to voter registration applications that Defendant rejected, canceled, or otherwise did not add to the voter roll (*e.g.*, applicants who are pending verification) since July 6, 2013, including all records relating to the specific reason an applicant was rejected, canceled, or otherwise not added to the voter roll.

12

B.  Defendant's disclosure must include, but should not be limited to, the following:

i.  Records reflecting whether a voter registration applicant was rejected, canceled, or otherwise not added to the voter roll because of a non-match with information in the DDS database or a non-match with information in the SSA database, and if so, which data field(s) resulted in the non-match.

ii.  Records sufficiently explaining the specific reason an applicant was rejected, canceled, or otherwise not added to the voter roll, including records sufficiently explaining the meaning of any abbreviations or codes used to represent such reasons in Defendant's disclosure;  and

iii.  Records reflecting the algorithm or criteria by which information in a voter registration application is determined to match or not match information in the DDS or SSA databases.

## ARGUMENT

Project Vote is entitled to preliminary injunctive relief requiring Defendant to make the Requested Records available for public inspection.  The Requested Records relate to voter registration applicants that Defendant rejected, canceled, or otherwise did not add to the voter roll, including the ***reason*** such applicants were rejected, canceled, or not added or to the voter roll.

Preliminary injunctive relief is appropriate where a movant "(1) []has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever harm the proposed injunction may cause to the non-moving party; and (4) if issued, the injunction would not be adverse to the public interest."

13

*Charles H. Wesley Educ. Found.*, 408 F.3d at 1354 (citation omitted).  Project Vote

satisfies each of these requirements:  Defendant's refusal to make available the

Requested Records constitutes a violation of the unambiguous requirements of the

NVRA's Public Disclosure Provision.  As a result, Project Vote cannot inspect

those records and thereby monitor Georgia's election procedures, advocate for

reform, or educate partner organizations.  That injury cannot be remedied with

damages.  Moreover, the harm to Project Vote outweighs any burden Defendant

may face in providing access to information that he is statutorily required to make

available for public inspection.  Further, ordering Defendant to make the

Requested Records available is in the public interest because it enables Project

Vote to exercise the oversight functions envisioned by the NVRA and protects

voting rights essential to a democratic society.  Preliminary injunctive relief is

therefore appropriate.

## I.      PROJECT VOTE IS SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS

### A.      The NVRA Requires Georgia to Make the Requested Records Available for Public Inspection

Project Vote is substantially likely to succeed on the merits of its claim.  The

NVRA mandates that Defendant make available for public inspection and copying

"***all records*** concerning the implementation of programs and activities conducted

for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1) (emphasis added). The Requested Records fall within the plain terms of the Public Disclosure Provision because they directly relate to the implementation of Georgia's process of reviewing and verifying voter registration applications and compiling, maintaining, and reviewing the voter roll.

Courts unanimously agree that the Public Disclosure Provision mandates broad disclosure of voter registration records, and Project Vote is aware of no case holding to the contrary. For example, in *Project Vote/Voting for America v. Long*, the Fourth Circuit Court of Appeals held that completed voter registration applications "are clearly 'records concerning the implementation of programs and activities conducted to for the purpose of ensuring the accuracy and currency of the official lists of eligible voters.'" 682 F.3d 331, 335 (4th Cir. 2012) (Wilkinson, J.) (quoting 52 U.S.C. § 20507(i)(1)). The Fourth Circuit found that the "***process*** of reviewing voter registration applications" is a "'program' and an 'activity'" because it is "carried out in the service of a specified end – maintenance of the voter rolls" and is performed by state election employees. *Id.* (emphasis added). Such a process, moreover, was "plainly" done for the purpose of ensuring the accuracy and currency of the voter roll. *Id.*; *see also True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 723-28 (S.D. Miss. 2014) (concluding records relating to the

15

"process of compiling, maintaining, and reviewing the voter roll" subject to disclosure).  The Fourth Circuit further found that the requested voter registration applications clearly "concern" that process.  *Long*, 682 F.3d at 335-36.  Given that the NVRA's Public Disclosure Provision applies to "***all*** records," the Court held that the provision should be construed to have "an expansive meaning because 'all' is a term of great breadth."  *Id.* at 336 (emphasis added).

Similarly, there can be no credible argument that the Requested Records are not "records" relating to a "program" or "activity" performed by state election officials for the purpose of "ensuring the accuracy and currency of the official list of eligible voters."  52 U.S.C. § 20507(i)(1).  Defendant's process of reviewing voter registration applications and determining applicants' eligibility, *i.e.*, whether to reject, cancel, or otherwise not add a voter registration applicants to the voter roll, is a "program and activity" within the meaning of the NVRA.  *See Long*, 682 F.3d at 335; *Hosemann*, 43 F. Supp. 3d at 723-28.  Further, this program and activity is conducted for the purpose of ensuring the accuracy and currency of the voter roll.  *See Long*, 682 F.3d at 335 ("Voter lists are not 'accurate' or 'current' if eligible voters have been improperly denied registration or if ineligible persons have been added to the rolls.").  Moreover, the Requested Records unquestionably "concern" this program and activity.  The reasons why Defendant rejects, cancels,

16

or otherwise does not add a voter registration applicant to the voter roll, including the data fields and the algorithm used to determine the applicant should be rejected, canceled, or not added, are by definition critical to this program. *Id.* at 335-36.

Indeed, records explaining the reason why and method by which Defendant rejects, cancels, or otherwise does not add a voter applicant to the roll are precisely the type of records that the Public Disclosure Provision was intended to make available to the public. These records are essential to allowing the public to evaluate whether Defendant is properly performing its obligations. *Id.* at 339 ("State officials labor under a duty of accountability to the public in ensuring that voter lists include eligible voters and exclude ineligible ones in the most accurate manner possible"); *see* 52 U.S.C. § 20507(i)(1) (express statutory purpose includes "ensur[ing] that accurate and current voter registration rolls are maintained"). Defendant can make no credible argument otherwise.

B.  Georgia Refuses to Make the Requested Records Available for Public Inspection

Despite the straightforward applicability of the Public Disclosure Provision, Defendant refuses to comply with his obligation under the NVRA to make the Requested Records available for public inspection. For nearly two years, Defendant has stonewalled and delayed even as Project Vote tried to work

17

cooperatively with Defendant to obtain the records in the most efficient manner possible.

Project Vote initially sought records in May 2014 relating to voter registration applicants who were rejected from the voter roll or whose applications were flagged at the polls because they did not provide satisfactory proof of U.S. citizenship.  Project Vote's subsequent concern that large numbers of new voter registration applicants may have been rejected, canceled, or otherwise not added to the voter roll for this reason or others, such as "non-matches" with information in certain government databases, led Project Vote to amend its original request on September 24, 2014 and October 15, 2014 to include **all** voters who were "rejected," "canceled," or otherwise not added to the voter roll for any reason. Mellor Decl. ¶¶ 14-16, 25.

Despite protracted negotiations and attempts to minimize any burden on Defendant, Project Vote never received all of the Requested Records.  In particular, although Defendant has produced incomplete records ***listing*** voter applicants that Defendant rejected, canceled, or otherwise did not add to the voter roll, Defendant refuses to provide records sufficient to identify the ***reason*** the Defendant made that decision or the data (such as a non-matching name) that was the basis of his conclusion.

18

Defendant is not only required by the NVRA to maintain voter registration records for at least two years, he publicly represented to the DOJ that the information sought by Project Vote is contained in the GVRS database that is in Defendant's possession, custody, and control.  In particular, Defendant has described the daily "R1 Report" and "R2 Report" as identifying voter registration applications that were not verified with information in the DDS or SSA databases, as well as the particular information that was not verified.  *See* Mellor Decl.¶ 8 & Exhibit A.  Similarly, Defendant represented to DOJ that notices are sent to not-verified voter registration applicants and that such notices list the information in their individual applications that was not verified.  *Id.* at 4.  Project Vote has yet to receive any of these records even though they are indisputably "records" Project Vote requested and they concern the implementation of "programs or activities conducted for purposes of ensuring the accuracy or currency of the list of eligible voters."  *Long*, 682 F.3d at 333.

Nor can Defendant claim that the Requested Records do not need to be made available because they are within a database.  Courts routinely require that parties to litigation produce information contained in databases as part of the discovery process.  *See In re Ford Motor Co.*, 345 F.3d 1315, 1316-17 (11th Cir. 2003) (holding parties may obtain discovery of "data compilations from which

information can be obtained" and the data must be provided in "a reasonably

usable form").  To the extent the records are contained in the GVRS database,

those records must be made available because the database is in Defendant's

"possession" and the data is reasonably available to Defendant.  Indeed, the

Georgia Open Records Act states that "an agency's use of electronic record-

keeping systems must not erode the public's right of access to records."  GA. CODE.

ANN. § 50-18-70(f) (2012).  Moreover, "[a]gencies shall produce electronic copies

of or, if the requester prefers, printouts of electronic records or data from data base

fields that the agency maintains using the computer programs the agency has in its

possession."  *Id.*

To hold otherwise would allow Defendant to avoid its obligations under

federal law simply by storing all relevant information in a database.  *Cf. Peskoff v.

Faber*, 240 F.R.D. 26, 30-31 (D.D.C. 2007) ("[I]t cannot be argued that a party

should ever be relieved of its obligation to produce accessible data merely because

it may take time and effort to find what is necessary.").  The Requested Records

are within Defendant's possession, custody, and control, and the NVRA

indisputably mandates that they be made available for public inspection.  Project

Vote has a substantial likelihood of success on the merits of its claim and

preliminary relief is therefore appropriate.

20

## II.    PROJECT VOTE WILL SUFFER IRREPARABLE HARM ABSENT PRELIMINARY RELIEF

Georgia's refusal to make the Requested Records available for public inspection as required by the NVRA causes an irreparable injury that can only be remedied by an injunction.  Inspection of the Requested Records before Georgia's voter registration deadline on October 11, 2016 is essential for Project Vote to exercise the oversight functions envisioned by the NVRA and to ensure all of Georgia's voters may exercise their right to vote in the upcoming election.  *See Long*, 682 F.3d at 339-40 ("Public disclosure promotes transparency in the voting process, and courts should be loath to reject a legislative effort so germane to the integrity of federal elections"); *Charles H. Wesley Educ. Found. v. Cox*, 324 F. Supp. 2d 1358, 1368 (N.D. Ga. 2004) (irreparable injury resulted if state not ordered to process voter registration applications).  Courts recognize that state action that deprives organizations of their ability to conduct voter registration drives before an election also constitutes irreparable harm:  "an election is a single event incapable of being repeated, and any deprivation of Plaintiffs' rights cannot be remedied after the election is over."  *ACORN v. Cox*, No. 1:06-cv-1891, 2006 WL 6866680, at *7 (N.D. Ga. Sept. 28, 2006).  Similarly, without a preliminary injunction, Project Vote will be unable to perform the very function the Public

Disclosure Provision envisions in time for the 2016 elections, even if Project Vote

prevails on summary judgment or at trial.

Moreover, Project Vote's inability to inspect the Requested Records cannot

be remedied with damages.  "'Given the fundamental nature of the right to vote,

monetary remedies would obviously be inadequate in this case; it is simply not

possible to pay someone for having been denied a right of this importance.'"  *Ga.*

*State Conf. of the NAACP v. Fayette Cnty. Bd. of Comm'rs*, 118 F. Supp. 3d 1338,

1348 (N.D. Ga. 2015) (quoting *Dillard v. Crenshaw Cnty.*, 640 F. Supp. 1347,

1363 (M.D. Ala. 1986)).  Georgia's voter registration deadline of October 11, 2016

is less than four months away, and a preliminary injunction is thus essential to

prevent irreparable injury.  Mellor Decl. ¶¶ 35-36.

## III.   THE BALANCE OF EQUITIES FAVORS GRANTING PRELIMINARY RELIEF

The balance of equities in this case firmly favors granting preliminary relief.

Defendant's refusal to make the Requested Records available for public inspection

undermines the NVRA's core purpose of enabling oversight of election officials

and protecting the voting rights of the public.  *See* 52 U.S.C. § 20501(b) (express

purposes of NVRA include "increas[ing] the number of eligible citizens who

register to vote" in federal elections, "enhanc[ing] the participation of eligible

citizens as voters," "protect[ing] the integrity of the electoral process," and

22

"ensur[ing] that accurate and current voter registration rolls are maintained"). Courts recognize that "[t]he right to vote is a fundamental right and is preservative of all other rights. . . . [d]enying an individual the right to vote works a serious, irreparable injury upon that individual." *Common Cause/Ga. v. Billups*, 406 F. Supp. 2d 1326, 1376 (N.D. Ga. 2005) ("[T]he inconvenience and expense that entering a preliminary injunction may work upon the State and Defendants" is insufficient to outweigh harms to the right to vote). Thus, "[the Public Disclosure Provision's] language embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Long*, 682 F.3d at 334-35.

Any harm to Defendant resulting from the cost of making the Requested Records available for public inspection does not weigh against preliminary relief: the cost of disclosure is a burden that Congress assigned to states as part of the NVRA's statutory scheme. *See Charles H. Wesley Educ. Found.*, 324 F. Supp. 3d at 1368 (noting that cost of complying with injunction is not a harm where "to the extent that such [costs] even constitute a harm, it is a burden mandated upon the Georgia Secretary of State by the United States Congress, and one which [a defendant] must accept"); *see also Long,* 682 F.3d at 339 (noting that the Public

23

Disclosure Provision embodies a policy choice in favor of transparency made by Congress).  As such, the balance of equities favors preliminary relief.

## IV.    A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST

The public's interest in transparency also favors a preliminary injunction. As the Fourth Circuit found, "[i]t is self-evident that disclosure [of voter registration records] will assist the identification of both error and fraud in the preparation and maintenance of voter rolls."  *See Long*, 682 F.3d at 339. Defendant "labor[s] under a duty of accountability to the public in ensuring that voter lists include eligible voters and exclude ineligible ones in the most accurate manner possible. Without such transparency, public confidence in the essential workings of democracy will suffer."  *Id.*

Here, preliminary relief that enables Project Vote to provide the oversight function envisioned by the NVRA prior to the October 11, 2016 registration deadline will benefit the public.  Obstructing Project Vote's access to Georgia's voter registration records dampens the accountability of election officials and creates an unacceptable risk that voters will be unable to exercise their fundamental rights.  Prospective voters cannot correct errors of which they are unaware and are unlikely to become aware until it is too late, *i.e.*, when they arrive at the polling place.  Indeed, the right to vote without "interference and

24

harassment" is crucial in a democratic society. *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1221 (11th Cir. 2009) ("[V]oting is about the most important thing there is."). Where, as here, there is a "substantial likelihood of success on the merits," ensuring that more voters have a chance to vote serves the public interest. *NAACP*, 118 F. Supp. 3d at 1348-49 (citing *Charles H. Wesley Educ. Found.*, 408 F.3d at 1355).

## CONCLUSION

For the reasons stated herein, this Court should grant preliminary injunctive relief to Plaintiff Project Vote ordering Defendant Secretary of State Brian Kemp to make the Requested Records available for public inspection.

Respectfully Submitted,

Dated:  July 13, 2016

*/s/ James W. Cobb*
James W. Cobb
Georgia Bar No. 420133
T. Brandon Waddell
Georgia Bar No. 252639
**CAPLAN COBB LLP**
75 Fourteenth Street NE
Suite 2750
Atlanta, Georgia 30309
P: (404) 596-5600
F: (404)596-5604
jcobb@caplancobb.com
bwaddell@caplancobb.com

(co-counsel listed on next page)

**PROJECT VOTE, INC.**

Michelle E. Kanter Cohen
(*admitted pro hac vice*)
1420 K Street NW
Suite 700
Washington, DC 20005
(202) 546-4173
mkantercohen@projectvote.org

**ROPES & GRAY LLP**

John C. Ertman
(*pro hac vice* application pending)
1211 Avenue of the Americas
New York, NY  10036
(212) 596-9000
john.ertman@ropesgray.com

Nicole C. Durkin
Jonathan R. Ference-Burke
David E. Rhinesmith
David A. Young
(*pro hac vice* applications pending)
2099 Pennsylvania Ave NW
Washington, DC 20006
(202) 508-4600
nicole.durkin@ropesgray.com
jonathan.ference-burke@ropesgray.com
david.rhinesmith@ropesgray.com
david.young@ropesgray.com

*Attorneys for Plaintiff Project Vote, Inc.*

## __RULE 7.1 CERTIFICATION__

I hereby certify that the accompanying memorandum of law in support of Plaintiff's Motion for a Preliminary Injunction was prepared in accordance with the font and point selections approved by the court in Local Rule 5.1B.

Dated:  July 13, 2016.

/s/ James W. Cobb
James W. Cobb

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I caused a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF PROJECT VOTE'S MOTION FOR PRELIMINARY INJUNCTION to be served by U.S. Mail, postage prepaid, upon the Defendant as follows:

Brian Kemp
Georgia Secretary of State and Chief Election Official
214 State Capitol
Atlanta, GA 30334

I further certify that on this day I have caused a true and correct copy of the foregoing to be delivered to counsel for Defendant by electronic mail as follows:

Cristina Correia
Assistant Attorney General
Office of the Attorney General
40 Capitol Square SW
Atlanta, GA  30034
ccorreia@law.ga.gov

This 13th day of July, 2016.

/s/ James W. Cobb
James W. Cobb
Georgia Bar No. 420133
jcobb@caplancobb.com

*Attorney for Plaintiff Project Vote, Inc.*