## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **PROJECT VOTE, INC.,** | * | |
| | * | **Civil Action No.** |
| **Plaintiff,** | * | **1:16CV02445-WSD** |
| | * | |
| **v.** | * | |
| | * | |
| **BRIAN KEMP, in his official capacity as** | * | |
| **Secretary of State and Chief Election** | * | |
| **Official for the State of Georgia,** | * | |
| | * | |
| **Defendant.** | * | |
| _____ | * | |

## DEFENDANT KEMP'S
## BRIEF IN SUPPORT OF MOTION TO DISMISS

Plaintiff filed this lawsuit on July 6, 2016 seeking unfettered access to the statewide voter registration database, or alternatively, compilations of data for every voter included in the statewide voter registration database. Doc. 1. Because the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20507(i), does not require public inspection of the statewide voter registration database and because the Help America Vote Act ("HAVA"), 52 U.S.C. § 21083, actually *prohibits* unauthorized access, Plaintiff's complaint should be dismissed.

1

## Statement of Facts

Plaintiff filed this action pursuant to the public disclosure provision of the NVRA, 52 U.S.C. § 20507(i), seeking an order directing Defendant to provide for public inspection the following:

A.  All records relating to voter registration applications that Defendant rejected, canceled, or otherwise did not add to the voter roll (*e.g.*, applicants who are pending verification) since July 6, 2013, including all records relating to the specific reason an applicant was rejected, canceled, or otherwise not added to the voter roll.

B.  Defendant's disclosure must include, but should not be limited to, the following:

   i.   Records reflecting whether a voter registration applicant was rejected canceled, or otherwise not added to the voter roll because of a non-match with information in the Georgia Department of Driver Services ("DDS") database or a non-match with information in the Social Security Administration ("SSA") database, and if so, which data field(s) resulted in the non-match.

   ii.  Records sufficiently explaining the specific reason an applicant was rejected, canceled, or otherwise not added to the voter roll, including records sufficiently explaining the meaning of any abbreviations or codes used to represent such reasons in Defendant's disclosure; and

   iii. Records reflecting the algorithm or criteria by which information in a voter registration application is determined to match or not match information in the Georgia DDS or SSA database.

2

Doc. 1 at 4.   Plaintiff alleges that "Defendant has only provided access to [ ] incomplete records that are missing the critical information Project Vote requires to exercise the oversight functions contemplated by the NVRA."   Doc. 1 at ¶ 10. Plaintiff acknowledges that, prior to filing this action, it received a data file containing canceled voters (from Oct. 1, 2012 through March 8, 2015) together with the following fields of data:

- County code

- Registration number

- Voter status

- Canceled date

- Canceled reason

- Last name

- First name

- Middle name

- House number

- Street name

- City

- Zip

- Year of birth

3

- Registration date

- Race

- Gender

Doc. 1 p. 25 n. 7.  Plaintiff also acknowledges it received "the GVRS User Guide, GVRS Manual, and other training materials."  Doc. 1 ¶ 67.   Plaintiff insists however, that it is entitled to the voter registration database.  Doc. 1 ¶ 66 (describing letter from Defendant's counsel as acknowledging that Defendant had not provided "the database underlying the Requested Records . . . due to *alleged* data security and cost concerns") (emphasis added); ¶ 70 (discussing Project Vote's willingness and desire to "set up a query of the GVRS database in order to obtain the DDS/SSN Data and other Requested Data it sought."); ¶ 70 (explaining that Plaintiff wanted detailed information for each voter registration application that failed to verify, including whether the failure to verify was with DDS database or SSA database, and which specific fields did not verify).[1]  Plaintiff recites numerous communications with Defendant's staff, including IT staff, to try to

---

[1] Of course, verification or matching with DDS and SSA databases did not *occur* in 1993 when the NVRA was enacted.  Only in 2002, pursuant to HAVA, are states now required to verify the information provided on a voter's registration application with these government databases.   52 U.S.C. § 21083(a)(5)(B).  Plaintiff seeks to require broad disclosure of the results of each voter applicant's verification data required by HAVA through a provision in the NVRA requiring disclosure of records pertaining to the NVRA's list maintenance processes.

develop a query that might result in the creation of a data report that would satisfy Plaintiff's request.  Doc. 1 ¶¶ 72-74.  Plaintiff requested, and was provided, a list of all fields in the GVRS database.  Doc. 1 ¶ 74.  Ultimately, on March 4, 2016, Project Vote sent Defendant's staff a detailed list of data fields it wanted in a report that was to include "All Voters or Voter Registration Applicants."  Doc. 1-16 at 4. Plaintiff requested the following information:

- All fields previously provided in the October 14, 2014 report and all fields previously provided in the April 3, 2015 report (see page 3 above for list of fields provided in the April 3, 2015 report)

- Address information from the registration application

- Date registration application entered into the GVRS system

- Application status

- Results of data matches, including any non-matches for the following:

  o DL or State ID match with DDS

  o DL or State ID match with DDS citizen check

  o SSN match with SSA

  o Match with HAVA fields

  o Alien ID match with SAVE

- Status of applicant's citizen documents, including whether applicant submitted acceptable citizenship documents

- Whether applicant is in Pending DDS verification bucket

- Whether applicant is in Pending DDS citizenship bucket

- Whether applicant completed all required fields in application, and, if so, any required fields that were missing from application

- Whether applicant's application was a duplicate application

- What, if any, non-governmental source collected application, for example a field indicating that the NAACP collected application

- Any audit history and audit change history, including whether a user correction (correcting a data entry error) was made

- Any correspondence records

- Any rejection/cancellation history

- Any voter participation history

- Messages from Check Message System

- Results of matches to vital records

Doc. 1 ¶ 75 and Doc. 1-16 at 4-6.  Additionally, for canceled voters, the following fields of data were also requested:

- Date voter registration applicant canceled

6

- Reason for cancellation

- Whether the local election official used override option to approve an otherwise canceled voter registration application

- Whether local election official used override option to cancel a voter registration application.

Doc. 1-16 at 6.   Finally, for voter registration applicants in a pending status, Plaintiff requested the following additional fields:

- Date voter registration applicant placed on pending list

- Reason voter applicant placed on pending list

- Whether local election official used override option to remove an applicant from pending list by approving the applicant

- Whether local election official used override option to place applicant on pending list.

Doc. 1-16 at 6.   Plaintiff's March 4, 2016 request appears to recognize that for several items on their list, it could not find even a corresponding field among the list of fields in Defendant's database.   Doc. 1-16 at 4-6.   Nonetheless, Plaintiff requests that Defendant provide the information.   *Id.*   Plaintiff defines "record" to include *any information* contained in Defendant's database about *each one* of Georgia's more than six million voters, regardless of whether Defendant's office

maintains any documents, reports, or electronic files that include the information Plaintiff seeks in the aggregate format Plaintiff desires.[2]

As an initial matter, voter registration in Georgia – as distinct from maintaining the statewide voter registration database - is conducted at the county level. O.C.G.A. § 21-2-220(a) (application for voter registration to be made with county registrar); O.C.G.A. § 21-2-221(e) (voter registration applications from DDS forwarded to county registrar); O.C.G.A. § 21-2-221.1(f) (voter registration applications from Department of Natural Resources forwarded to county registrar); O.C.G.A. § 21-2-221.2(d) (online voter registration applications forwarded to county registrars); O.C.G.A. § 21-2-222(i) (voter registration applications from public assistance offices forwarded to county registrars); and O.C.G.A. § 21-2-223 (mail voter registration applications forwarded to county registrars).

Secretary Kemp has responsibility for maintaining the statewide centralized voter registration database required by HAVA. O.C.G.A. § 21-2-50.2(a). HAVA, 52 U.S.C. § 21083(a)(1)(A), requires the implementation of a "single, uniform,

---

[2] The problem with Plaintiff's request is twofold. First, some of the "data" for each individual voter is confidential. Second, even where the data is not confidential, the data is maintained in each individual voter's record, not in an aggregate compilation as Plaintiff seeks. For example, Plaintiff seeks information regarding each voter's "cancelation history." Doc. 1 ¶ 75 and Doc. 1-16 at 4-6. While that "data" may be ascertained in each individual voter file, Defendant's computer software cannot generate a report providing that detail for all canceled Georgia voters.

official, centralized, interactive computerized statewide voter registration list." HAVA also mandates that states must require an applicant's driver license number, and if the applicant does not have a driver's license, the last four digits of the applicant's social security number.  52 U.S.C. § 21083(a)(5)(A).  States are required to verify the applicant's information with databases from that state's motor vehicle authority or the social security administration.  52 U.S.C. § 21083(a)(5)(B).  This verification process did not exist prior to HAVA's enactment in 2002, nearly a decade after passage of the NVRA in 1993.  Only the NVRA contains the disclosure of records provision that is the basis for Plaintiff's lawsuit.

## ARGUMENT AND CITATION OF AUTHORITY

### I.    The Standard of Review.

When reviewing a motion to dismiss, the Court must take the allegations of the complaint as true, and must construe those allegations in the light most favorable to the plaintiff. *Riven v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Amer. Dental Assoc. v. Cigna*

*Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (courts are to "eliminate any allegations in the complaint that are merely legal conclusions").

Additionally, "unwarranted deductions of fact in a complaint are not admitted as true for purposes of testing the sufficiency of plaintiff's allegations." *Sinaltrainal v. The Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (internal quotations omitted). A court is to make reasonable inferences in the plaintiff's favor, but it is not required to draw plaintiff's inferences. *Id.*; *see also Amer. Dental Assoc.*, 605 F.3d at 1290 ("courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer") (quoting *Iqbal*, 556 U.S. at 682)). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal*, 578 F.3d at 1260. Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

II.    **Plaintiff's Complaint Fails to State a Claim for Relief Because Nothing in the NVRA Requires States to Create Programs to Generate Custom Reports Not Otherwise Available to Election Officials.**

   A. **Georgia's Statewide Voter Registration Database is Not a "Record" Subject to the Disclosure Provisions of the NVRA.**

Plaintiff contends that it is entitled to inspect the statewide voter registration database and entitled to require that Defendant design reports consisting of whatever data fields Plaintiff chooses.  Doc. 1-16 at 4-6; Doc. 1-13 at 5.  While Plaintiff asserts that it has been denied access to *records*, Plaintiff's complaint fails to identify any document it was denied.  Rather, Plaintiff defines the word "record" in the NVRA to mean any piece of information contained in the statewide voter registration database, including information on when data was entered into the database.  *See* Doc. 1-16 at 4 (seeking data on "Date voter registration application first entered into GVRS"); at 5 (seeking "Any Audit History and Audit Change History, including whether a User Correction (correcting a data entry error) was made"); Doc. 1-3 at 2 (describing information Plaintiff seeks for each voter's record).  In short, Plaintiff is seeking more than records, it is seeking real-time access to the state's voter registration database.  Moreover, Plaintiff is seeking the information compiled in a manner inconsistent with Defendant's use.  While detailed information for each individual voter may be maintained in the statewide voter registration database, Plaintiff is seeking specific compilations of that data.

11

Plaintiff seeks data that is kept at the individual voter level to be compiled and distilled into a report that would then provide information for all voters in the aggregate.  *See* Doc. 1-16 at 4-6 (seeking specific information or data fields for every voter or every canceled voter, etc.).  Finally, Plaintiff insists Defendant is required to provide whatever data compilation it seeks free of charge.  Doc. 1 ¶ 94(d); Doc. 1-6.

### 1.  HAVA *Prohibits* Providing Plaintiff Unfettered Access to the Statewide Voter Registration Database.

Plaintiff's claim that it is entitled to unfettered access to the statewide voter registration database is foreclosed by HAVA.  52 U.S.C. § 21083(a)(3).  As noted above, Congress first required states to maintain a centralized interactive computerized voter registration database in 2002.  52 U.S.C. § 21083(a)(1)(A).  Through HAVA, Congress *requires* states to collect a voter applicant's driver's license number, and if not available, the last four digits of the applicant's social security number.[3]  52 U.S.C. § 21083(a)(5)(A)(i).  Aware that creating a centralized statewide database with vast amounts of personal data created a security risk, Congress expressly required that states limit access to the database.

---

[3] Prior to HAVA only jurisdictions that required social security numbers for voter registration prior to passage of the 1974 Privacy Act were permitted to continue requiring social security numbers.  Pub. L. 93-579, 88 Stat. 1896 (1974), 5 U.S.C. § 552a (note); *Schwier v. Cox*, 439 F.3d 1285, 1286 (2006).

(3)   Technological security of computerized list.   The appropriate State or local official shall provide adequate technological security measures to *prevent the unauthorized access* to the computerized list established under this section.

52 U.S.C. § 21083(a)(3) (emphasis added).[4]   Plaintiff's contention that the NVRA's public disclosure provision entitles it unfettered access to data collected pursuant to HAVA is frivolous and its complaint should be dismissed.

## 2.   The NVRA's Public Disclosure Provision Does Not Require Access to a Statewide Voter Registration Database.

The starting point in any case involving statutory construction is the language of the statute itself. *Watt v. Alaska*, 451 U.S. 259, 265 (1981).   The court assumes that Congress used the words in the statute as they are commonly and ordinarily understood and reads the statute to give full effect to each of its provisions. *United States v. McLymont*, 45 F.3d 400, 401 (11th Cir. 1995) (per curiam).   The court should not look at one word or term in isolation, but rather should consider the entire statutory context. *United States v. McLemore*, 28 F.3d 1160, 1162 (11th Cir. 1994) (citations omitted).   The court should only look beyond the plain language of a statute for evidence of congressional intent if the

---

[4] Additional confidentiality provisions in both HAVA and the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C. § 20302, also restrict access to certain information contained in the statewide voter registration database. *See* 52 U.S.C. §21082(a)(5)(B) and 52 U.S.C. § 20302(e)(6)(B).

statutory language is ambiguous; applying the language according to its plain meaning would lead to an absurd result; or there is clear evidence of contrary legislative intent. *Iberiabank v. Beneva 41-I, LLC*, 701 F.3d 916, 924 (11th Cir. 2012). Here, Plaintiff's interpretation is both inconsistent with the plain language of the statute and contrary to congressional intent.

### a. The Language of the Statute Establishes that the Disclosure Provision Is Limited to Records Pertaining to List Maintenance Processes.

The NVRA, 52 U.S.C. § 20507(i), provides as follows:

(i)    Public disclosure of voter registration activities.

  (1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all *records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters*, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

  (2) The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection [52 U.S.C. § 20507] (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

52 U.S.C. § 20507(i) (emphasis added).

First, the types of records Congress made available for inspection and copying are those "concerning the implementation of *programs and activities* conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  52 U.S.C. § 20507(i)(1) (emphasis added).  "Thus, to be subject to disclosure under the NVRA, a record must ultimately concern activities geared towards ensuring that a State's official list of voters is errorless and up-to-date." *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 720 (S.D. Miss. 2014).

Here, much of the data that Plaintiff seeks is related to the verification process mandated by HAVA, not the list maintenance processes set out in the NVRA.  Under the NVRA there was no requirement that states verify information on a voter's application with other databases.  After HAVA, states must require voter registration applicants to provide a driver's license or the last four digits of their social security number, and then verify the information provided with DDS and SSA.  52 U.S.C. § 21083(a)(5).  Nonetheless, Plaintiff insists that when Congress referred to "records" in the NVRA's disclosure provision it meant information pertaining to a voter verification process it would enact nearly a decade later.  Any suggestion that Congress intended to include disclosure of state voter registration databases when it referred to "all records" in the NVRA is simply

created of whole cloth.  As noted, HAVA expressly *prohibits* public inspection of the database.  52 U.S.C. § 21083(a)(3).

Second, the NVRA requires that the records which are subject to disclosure must be "maintain[ed] for at least 2 years."   52 U.S.C. § 20507(i)(1).   The limitation on how long the "records" must be maintained is a clear indication that Congress did not intend "record" to mean "database."  Nor did Congress intend that "record" mean a voter's individual record, which must also be maintained for longer than two years, Congress intended "record" to mean list maintenance documents that can be destroyed after two years.[5]

Third, the requirement that the records be available for photocopying suggests the "records" are documents or files capable of being copied, or a digital file capable of printing and copying, not a database or the data contained in a database.  Similarly, that Congress included language permitting states to charge reasonable costs for photocopying, and made no similar provision for the much more significant costs incurred by states to create computer programs designed to

---

[5] Defendant acknowledges that the Fourth Circuit has rejected the argument that the NVRA's disclosure provision is limited to records associated with a state's list maintenance procedures.  *Project Vote/Voting for America v. Long*, 682 F.3d 331, 335 (4th Cir. 2012).  Defendant respectfully submits that *Long* is contrary to congressional intent; however, even *Long* did not go as far as to extend the definition of "record" to include a statewide voter registration database.

16

generate compilations of aggregated data, is a clear indication that Congress never intended "data" to be considered a "record."

Here, Plaintiff insists that the NVRA requires that Defendant provide data compilations in the format Plaintiff seeks, and "free of cost."  Doc. 1 ¶15, ¶ 94(d). *See also* Doc. 1-6 (threatening litigation under the NVRA if costs charged for electronic data files were not reimbursed).  Congress did not intend that a provision permitting public inspection of list maintenance records maintained by election officials include a requirement that state officials spend thousands of dollars to develop computer programs aimed at creating reports formatted to provide compilations of whatever pieces of data any member of the public chooses whenever they choose.  The NVRA's statutory language is clear; it mandates disclosure of certain "records," not particular pieces of data from individual voter records aggregated and formatted in a manner of Plaintiff's choosing.

### b.  Every Term in the Statute Must Be Given Full Effect.

Plaintiff's reading of the NVRA's disclosure provision, to require disclosure of all records and data relating to voter registration, would make language in the statute superfluous.  First, the statute provides for disclosure of "all records *concerning* the implementation of programs and activities."   52 U.S.C. § 20507(i)(1).  The word "concerning" is a limitation on all records.  Second, the

statute expressly provides for disclosure of certain list maintenance records. 52 U.S.C. § 20507(i)(2).   There would be no need to expressly provide for the inclusion of a specific list maintenance document *if* Plaintiff was correct that all voter registration data is subject to disclosure.  A statute should be read to give full effect to each of its provisions.  *McLymont*, 45 F.3d at 401.

      **c. The Statutory Context Supports Defendant's Reading of the Disclosure Provision as Limited to Records Pertaining to List Maintenance Processes.**

Section 8 of the NVRA, 52 U.S.C. § 20507 sets out the states' list maintenance obligations.  The terms "*program*" and "*activities*" occur in three subsections of Section 8, and always in connection with list maintenance.  First, Section 8(a)(4) requires states to have a "*program* that makes a reasonable effort to remove the names of ineligible voters from the official list of eligible voters." 52 U.S.C. § 20507(a)(4) (emphasis added).   Second, Section 8(b) establishes guidelines for "[a]ny State *program* or *activity* to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll."  52 U.S.C. § 20507(b) (emphasis added).  Third, Section 8(c) sets out requirements for states' voter removal "*programs.*"   52 U.S.C. § 20507(c) (emphasis added).   Each of these subsections within Section 8 of the NVRA pertain to list maintenance, specifically, the removal of names from a state's list of

registered voters for the reasons enumerated within Section 8. Similarly, the references to *program* and *activity* in the public disclosure provision, subsection (8)(i) of the NVRA, also pertain to list maintenance activities. Because the data requested by Plaintiff is not part of any list maintenance *program* or *activity* it is not covered by the public disclosure provision of the NVRA, and therefore Plaintiff's complaint should be dismissed.

### d. The Statutory History Supports Defendant's Reading of the Disclosure Provision as Limited to Records Pertaining to List Maintenance Processes.

Congress intended that the records available for inspection were those records tied to states' list maintenance processes. Both the House and Senate Committee Reports preceding the NVRA describe the disclosure provision as follows:

> Subsection (i) provides that each State shall maintain for two years all records concerning the implementation of programs and activities conducted *for the purpose of ensuring the accuracy and currency of addresses on the official list of eligible voters*. The records must be made available for public inspection and, where available, photocopying at reasonable costs. The records shall include lists of names and addresses of all persons to whom notices were sent and information concerning whether or not each person has responded to the notice as of the date of inspection.

> Provisions of this Act pertaining to voter registration programs require that information regarding a person's declination to register not be used for any purpose other than registration. There was also concern that information not be made public as to what voters

19

> registered at a particular agency, such as a welfare or unemployment office.  Therefore, these records may not contain any information relating to a declination to register or the identity of a voter registration agency through which any particular voter is registered, or a list of those persons registered through a particular agency.

H.R. REP. NO. 103-9, at 19 (1993) (emphasis added); S. REP. NO. 103-6, at 35 (1993).  These reports make clear that the disclosure provision was intended to provide transparency in the removal of voters from registration lists due to evidence of a change of address premised on a voter's inactivity in prior election(s).  Congress was concerned about voters being removed from the registration lists solely for not voting and established a procedure for removal that includes a requirement that a voter first receive a postcard notification, described in Section 8(d), 52 U.S.C. § 20507(d), of the NVRA.  For that reason, Congress expressly required documents be maintained with lists of voters who are sent the confirmation postcards and lists of those voters who respond.  The NVRA disclosure provision is intended to provide transparency in the state's list maintenance processes under the NVRA.  Here, Plaintiff seeks to use the NVRA's disclosure provision to obtain detailed information not on list maintenance but on voter registration processes implemented through HAVA.

Both the language of the NVRA and the legislative history support limiting the records subject to the statute's disclosure provision to list maintenance records,

and not voter registration records or a state voter registration database.  In other words, the records subject to the disclosure provision are those used by Defendant and county registrars in conducting list maintenance; lists of deceased individuals from vital records, lists of felons, lists of persons declared mentally incompetent, lists of voters sent confirmation postcards, lists of voters that responded to the confirmation postcards.  Because the voter registration database is not a "record concerning the implementation of programs and activities conducted" by Defendant or county registrars, the complaint should be dismissed in its entirety. 52 U.S.C. § 20507(i)(1).

**B. To the Extent Plaintiff is Seeking Records Other Than Data Included in the Statewide Voter Registration Database, Plaintiff's Claim is Barred Because it Failed to Provide Statutory Notice of the Violation.**

The NVRA requires that an aggrieved party give notice of the specific violation to Defendant.  *See* 52 U.S.C. § 20510(b).  "[T]he purpose of the notice requirement [is] to 'provide states . . . an opportunity to attempt compliance before facing litigation.'"  *Scott v. Schedler*, 771 F.3d 831, 836 (5th Cir. 2014) (quoting *Ass'n of Cmty. Orgs. for Reform Now ("ACORN") v. Miller*, 129 F.3d 833, 838 (6th Cir. 2014)).

Here, Plaintiff has consistently sought access to Defendant's database and has requested Defendant's staff to *create* records custom tailored to Plaintiff's

preferences.  However, to the extent that Plaintiff suggests that what it really seeks in this litigation is copies of documents maintained by election officials, Plaintiff has not provided Defendant with statutory notice, pursuant to 52 U.S.C. § 20510(b).  *See* Doc. 1-13 Plaintiff's July 6, 2015 Notice under 52 U.S.C. § 20510(b) ("Your office has failed to provide a complete *database file* underlying the above records and reports that contains all of the data fields your office has on file." (emphasis added)).  Plaintiff's communications with Defendant's staff *after* it sent the July 6, 2015 written notice of alleged violations further support the conclusion that what Plaintiff seeks is access to the statewide voter database, *not* copies of individual notices to voter applicants.  *See* Doc. 1-15 at 7 (Sept. 30, 2015 email seeking complete database file); Doc. 1-15 at 5 (requesting call with Defendant's IT staff); Doc. 1-16 at 4-6 (March 4, 2016 email including a table describing data Plaintiff seeks and the possible fields applicable in the GVRS database).  Similarly, communications with Defendant's staff *before* Plaintiff's July 6, 2015 letter also focused on access to Defendant's database.  *See* Doc. 1-5 (letter to Defendant's staff seeking detailed information for each voter record in the state database); Doc. 1-11 (seeking detailed data on reasons each voter on list provided was not verified).

Plaintiff sent Defendant statutory notice that it sought all "records" and repeatedly conveyed to Defendant's staff that what it wanted was detailed data from Defendant's database.  To the extent Plaintiff now seeks other, more limited or specific "records," its claim is barred because Plaintiff has failed to put Defendant on notice, pursuant to 52 U.S.C. § 20510(b).  Statutory notice is mandatory prior to filing suit.  *Schedler*, 771 F.3d at 835; *Ga. State Conf. of the NAACP v. Kemp*, 841 F. Supp. 2d 1320, 1335 (N.D. Ga. 2012).

## CONCLUSION

For the foregoing reasons, Defendant prays that the Court dismiss Plaintiff's complaint in its entirety.

Respectfully submitted,

SAMUEL S. OLENS          551540
Attorney General

DENNIS R. DUNN          234098
Deputy Attorney General

RUSSELL D. WILLARD   760280
Senior Assistant Attorney General

/s/Cristina Correia
CRISTINA CORREIA          188620
Assistant Attorney General

JOSIAH B. HEIDT          104183
Assistant Attorney General

23

Please address all
Communication to:
CRISTINA CORREIA
Assistant Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
ccorreia@law.ga.gov
(404) 656-7063
 Fax:  404-651-9325

## CERTIFICATE OF COMPLIANCE

I hereby certify that the forgoing Defendant's Brief in Support of Motion to Dismiss was prepared in 14-point Times New Roman in compliance with Local Rules 5.1(C) and 7.1(D).

## Certificate of Service

I hereby certify that on Aug. 3, 2016, I electronically filed Defendant Brian Kemp's Brief in Support of Motion to Dismiss using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

James Cobb
Timothy Brandon Waddell
Caplan Cobb LLP, Suite 2750
75 Fourteenth Street, NE
Atlanta, GA  30309

Michelle Kanter Cohen
Project Vote
1420 K. Street NW
Washington, D.C.  20005

John C. Ertman
ReBoul MacMurry Hewitt Maynard & Kristol
45 Rockefeller Plaza
New York, NY  10111

Jonathan R. Ference-Burke
Ropes & Gray, LLP-DC
2099 Pennsylvania Avenue, NW
Washington, D.C.  20006

I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:  NONE

This 3rd day of August, 2016.

/s/Cristina Correia
Cristina Correia          188620
Assistant Attorney General